## MATTHEWS *vs.* BAKER.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Location of lands by State, under act of congress of 11th August,* 1848. The act of congress of August 11, 1848, (9 U. S. Statutes at Large, 281,) having placed at the disposal of the legislature of this State, for the use of schools in the valueless sixteenth sections, certain lands theretofore granted to the State for internal improvements, (5 *ib.* 455,) and authorized the legislature to locate the same; and

the legislature·having, by the act of February 13, 1850, (Session
Acts 1849–50, p. 82,) authorized the issue of certificates of purchase
for these lands by the comptroller of public accounts, or by a loca-
ting agent,—a certificate of purchase, signed by the governor, and
countersigned by the secretary of state, being issued without au-·
thority, does not evidence a selection of the land by the State, and
cannot defeat a recovery by one claiming under subsequent entry
from the United States.

APPEAL from the Circuit Court of Pike.
Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by Willoughby Baker, against
Randolph Head, to recover the possession of the south-
west quarter of the south-west quarter of section nine, in
township twelve, range twenty-one. Jehu Matthews was
made a defendant, as the landlord of Head, and pleaded
not guilty. On the trial, as appears from the bill of ex-
ceptions, the plaintiff read in evidence the receipt of the
receiver of the land-office at Cahaba, dated August 2, 1855,
acknowledging payment by the plaintiff for the land in
controversy, at fifty cents per acre. "The defendant then
introduced in evidence a certificate for the said land,
dated the 21st August, 1850, signed by the governer of
this State, and countersigned by the secretary of state,
entered by William Johnson, under the act of the legisla-
ture approved on the 13th February, 1850, authorizing
the entry of certain lands donated by the congress of the
United States for the benefit of valueless sixteenth sec-
tions; and a quit-claim deed from said Johnson to him-
self." The plaintiff then read in evidence the deposi-
tions of the secretary of state and comptroller of public
accounts, "for the purpose of showing·that said land was
not subject to entry under said act of the legislature of
this State." To the former of these depositions the de-
fendant objected, "on the ground that the witness was
not the custodian of the records in relation to which he
testified," and reserved an exception to the overruling of
his objection. "The court thereupon charged the jury,
at the request of the plaintiff, that if they believed all
the evidence, they must find for the plaintiff; to which

charge the defendant excepted," and which he now assigns as error.

H. W. Hilliard, for appellant.

Pugh & Bullock, *contra.*

A. J. WALKER, C. J.—Conceding that the entire evidence which was before the court below appears to be presented by the record, and that we can therefore revise the charge upon the effect of the evidence, we must decide the question of title against the defendant. Under the act of congress of 11th August, 1848, the legislature had the privilege of locating five hundred thousand acres of land, less the amount previously received.—9 U. S. Stat. at Large, 281; 5 *ib*. 455. The only evidence of a location of the land in controversy is a certificate, under which the defendant claims, signed by the governor, and countersigned by the secretary of state. The act of the legislature of this State of 13th February, 1850, authorizes the issue of certificates by the comptroller, or a locating agent; and it may be (though we do not decide the point) that the certificate of the comptroller or locating agent would be *prima-facie* evidence that the State had selected the land mentioned in the certificate. It is clear, however, that neither the governor nor secretary of state had any authority to issue any such certificate.—Pamphlet Acts of 1849–50, p. 82. The governor's certificate of purchase, being issued without authority, could not evidence a selection of the land by the State; and until the land was selected by the State, the title remained in the general government, and was subject to entry at the proper land-office of the United States. There was, therefore, no error in the charge given by the court.

This view of the question of title renders it unnecessary to consider the questions of evidence made by the appellant, as they could not affect the result.

Judgment affirmed.